[Civ. No. 2668.   Third Appellate District.—May 26, 1924.]

# W. W. HUTCHINSON, Respondent, v. RECLAMATION DISTRICT No. 1619, Appellant.

[1] CONTRACTS—DREDGING SERVICES—LIABILITY OF RECLAMATION DISTRICT FOR PAYMENT—EMPLOYMENT BY TRUSTEE—ABSENCE OF FORMAL CONTRACT — KNOWLEDGE — RETENTION OF BENEFITS. — A reclamation district is liable as upon an implied contract to pay for the reasonable value of services rendered at the instance of a trustee of the district in digging and cleaning its drainage canal, even though there be no formal contract of employment of the plaintiff by the district, where the law does not require formal steps or proceedings for such contract of employment, and the authority exists for the district to make such employment, and the services are rendered and the benefits received with knowledge thereof by the trustees of the district.

[2] ID.—PARTIAL PAYMENT—RATIFICATION.—The board of trustees of such reclamation district having ordered issued to the plaintiff two warrants in partial payment for the services rendered, to this extent they ratified the agreement made by one of said trustees with the plaintiff to perform the services in question.

[3] ID.—WHAT IS INCLUDED IN CONTRACT.—A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used.

[4] ID.—SERVICES—RIGHT OF CONTRACTOR TO DO WHATEVER NECESSARY. The plaintiff contractor having been employed to clean the drainage canal of the defendant reclamation district, and it having been left entirely to him to do the work and no directions having been given by the trustees, whatever was reasonably necessary under the circumstances to be done in order to perform the services would be included such as the digging of the canal to permit the dredger to float.

[5] ID.—SERVICES—EMPLOYMENT—STATUTE OF FRAUDS—SUBDIVISION 4, SECTION 1624, CIVIL CODE.—A contract for services or employment does not come within the terms of subdivision 4 of section 1624 of the Civil Code.

---

(1) 14 C. J., p. 376, sec. 491; 19 C. J., p. 702, sec. 193.   (2) 19 C. J., p. 702, sec. 193.   (3) 13 C. J., p. 558, sec. 521.   (4) 19 C. J., p. 702, sec. 193.   (5) 27 C. J., p. 235, sce. 243.

1.   See 9 Cal. Jur. 871, 921.
2.   See 9 Cal. Jur. 916.
3.   See 6 Cal. Jur. 318; 6 R. C. L. 856.
5.   See 12 Cal. Jur. 861; 16 Cal. Jur. 961; 25 R. C. L. 476, 478.

`APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Affirmed.

The facts are stated in the opinion of the court.

Albert Picard and E. A. Bridgford for Appellant.

Matthew Ward and Rodgers & Bray for Respondent.

PLUMMER, J.—In this action plaintiff had judgment against the defendant for the sum of $2,116 for and on account of certain dredger work done and performed by the plaintiff for the defendant district, from which judgment the defendant appeals.

The action is upon two counts: One upon an express contract; the other upon *quantum meruit.* The trustees of the district were included as defendants, but· their motion for a nonsuit was sustained by the trial court and the cause of action as against them dismissed. On the twenty-sixth day of November, 1919, at a meeting of the trustees of the defendant district, the following motion was adopted, to wit: "Upon motion duly made and unanimously carried, it was ordered that the drainage canal running across the district should be cleaned, beginning on the Sand Mound Slough and extending down to at least the bridge across said canal on the Hotchkiss land."

This motion appears to be the only record made by the board of trustees of said district in relation to the contemplated work. It appears from the transcript that prior to this date and on or about the twenty-first day of November, 1919, William T. Sesnon, one of the trustees of the district, had written a letter to the plaintiff which letter is substantially as follows: "At a meeting a day or so ago with Mr. Hotchkiss it was decided to proceed at once with the work of cleaning out the main drainage canal, and particularly the one running through my ranch, and which I endeavored to have cleaned last spring."

After receipt of this letter by the plaintiff, the plaintiff and the said Sesnon had a conversation over the phone as to the costs and expenses of performing the work. This conversation appears to have been had prior to the adoption of the motion wherein it was resolved to proceed with the work in question. The terms agreed upon for doing the

work, in the conversation referred to, were the sum of three dollars per hour and certain incidental expenses for taking the dredger, belonging to the plaintiff, to the canal upon which the work was to be performed. The plaintiff on or about December 19, 1919, towed the ditcher or dredger, owned by him, to the place where the work was to be performed, took it over the levee, around the lands of the district and on the twenty-third day of December, 1919, began the work of deepening and cleaning the canal in question. It further appears that at the time of the beginning of the work and for a considerable period thereafter there was not sufficient water in the canal to float the dredger. In order to perform the work of cleaning and moving the dredger forward, the captain of the dredger increased the depth of the canal by about five feet in the center and four feet on the sides. Work was continued from the twenty-third day of December, 1919, to the eighth day of January, 1920, when, on account of necessary repairs being required to the machinery of the dredger, work was suspended until about the fifteenth day of March, 1920, when it was again resumed. It does not appear that any of the trustees of the district were within the district during the progress of the work. It further appears from the transcript that, within a few days after the 15th of March, a son of one of the trustees of the district visited the scene of operations and notified the captain of the dredger that he was not doing the work rightly; that all they wanted was the cleaning of the ditch and not any deepening; that the deepening could be obviated by bringing water into the canal through a siphon. The captain claimed that he had no authority to turn water into the canal. Through an arrangement made by the said Mr. Hotchkiss, water was turned into the canal through a siphon which appears to have been previously installed and used by the district for such purposes when desired, and after so doing the deepening of the ditch by the dredger was discontinued and much more rapid progress was made. After the eighth day of January, when work was discontinued, and before the resumption of work on March 16th, trustee Sesnon left the state and did not return until after all work had ceased. Prior to the leaving of trustee Sesnon, as above stated, a bill for the December work performed by the plaintiff for the district was presented for payment, the

receipt of which was acknowledged by trustee Sesnon in a letter dated January 6, 1920, and is as follows:

"Mr. W. W. Hutchinson,
    "P. O. Box 173,
        "Antioch, California.
"Dear sir:

"I am just in receipt of your bill against the Sand Mound Reclamation District and have forwarded same to Judge Bridgford, the secretary. I will endeavor to get in touch with the judge in the next day or two so that he can call a meeting and order payment of the bill. Please accept the assurance of my appreciation of your courtesy in doing this work so promptly."

Whether any meeting was called, as contemplated, does not appear. No payment, however, was made of the bill in question at that time. All work was finally ended and the dredger moved out of the district on or about the last of April, 1920. Thereafter, the plaintiff, having filed each month during the continuance of the work separate bills or statements of the work as it progressed, filed a general claim for the total amount of work, and during the month of May, 1920, the board of trustees issued to the plaintiff on account of said work two warrants, one in the sum of $400 and the other in the sum of $1,500. No further payments having been made, this suit was instituted to recover the balance alleged to be due. It does not appear from the transcript that any conditions were attached to the two warrants issued, as above stated, that is, whether at the time of the issuing of said warrants the trustees claimed that that was the total amount due and was made in full settlement. In other words, the testimony simply shows the issuance of the two warrants on account of said work and nothing more. The transcript further shows that trustee Sesnon had a conference with W. J. Hotchkiss, a trustee of the district, relative to the doing of the work and the terms submitted by the plaintiff; that it was tacitly agreed that Sesnon should proceed to have the work done; that trustee Bridgford was ill at the time; that no conversation was had with him; and that he took no action further than the resolution passed by the board of trustees indicates. That the bills for work were forwarded to him is stated by the letter written by trustee Sesnon. Knowledge that the

work was being done in pursuance of the resolution adopted by the board was thus brought home to all of the trustees shortly after it was begun (if not previously to all of them). Upon this statement of the facts it is contended by the appellant that the district is not liable for any sum whatever, although one of the trustees and counsel for the district, during the course of the trial, appears to have made the statement that the district was liable for the reasonable value of the work done. The bone of contention is really the extra cost of digging out the canal by the dredger in order to permit its progress in cleaning the canal instead of turning water into the canal through a siphon, hereinbefore referred to, and obtaining flotation of the ditcher by that method. The defendant in its answer, after denying the cause of action of any contract, etc., states its defense as follows: "Deny that the ditching work done upon said lands of Reclamation District No. 1619, or the use of said ditcher, or said work and the use of said ditcher, was or is of the value of $4,322.00, or of the value of any greater sum than $1,900; and allege that said value, to wit, the sum of $1,900.00 has been fully paid before the filing of the complaint of plaintiff herein."

The court found the value of the work as alleged by the plaintiff and gave judgment for the amount thereof. The court, also, found that the work was done at the special instance and request of the reclamation district and for its use and benefit. Is the defendant district liable for the value of the work upon the facts stated? Subdivision 9, section 3454, Political Code, authorizes the board of trustees of the reclamation district: "To employ such labor and to purchase and operate or hire such tools, machinery, material and equipment and to make and enter into such contracts and agreements as they shall deem necessary in order to accomplish the proper construction, maintenance, repair or operation of the works of reclamation of the said district."

[1] Subdivision .3 of the same section specifies that the board of trustees shall elect a secretary whose duty it shall be to have charge of the office of the board of trustees, to keep its minutes, attest all documents requiring the signature of the president, keep true and accurate accounts of all expenditures made in behalf of the district and that all accounts and contracts that may be made by said board of

trustees shall be open to the inspection of the board of supervisors and every person interested. There does not seem to be anything in the statute requiring any formal action by the board of trustees in entering into a contract or making an agreement with anyone relative to the hiring of machinery or the performance of work for the uses and benefits of the district. The board in this instance appears to have formally declared its intention of having the work done, but no formal action concerning the agreement with the plaintiff was taken or had. The work to be done was one of maintenance. No plans were necessary and there is no prescribed form in the statute to be followed by the trustees in having the work done. Nor is there anything in the statute requiring the recording or entering upon the minutes of the district the agreement or hiring of the plaintiff to do the work in question. Thus the rule found in section 491, 14 Corpus Juris, 376, would seem to apply: "Charter or statutory provisions as to recording the acts of a corporation or its officers must be complied with; but in the absence of any such requirement it is not necessary that the by-laws, resolutions, contracts, or other acts of a corporation or its officers shall appear on the records of the corporation or be evidenced by any writing at all, if it would not be necessary in the case of an individual, and if no record is kept, or if the particular matters do not appear on the record, they may be proved by parol evidence."

It further appears in the transcript in this case that the practice in the district in relation to work of the kind here involved, has been, after the work was authorized to be done in the district, to delegate to some one of the trustees authority to have the work done, but that this was the first time that Mr. Sesnon had undertaken to negotiate for such services. That there was no formal contract in this case the facts, of course, establish, but in the absence of any particular provision of the law requiring formal steps or proceedings, such action does not appear necessary. If the authority exists to do the work, to enter into the agreement or to make the employment, a contract will be implied to pay for the services, or, in other words, the reasonable value thereof. In the case of *Buck* v. *City of Eureka*, 124 Cal. 61 [56 Pac. 612], a case involving the employment of an attorney, the court disposes of the contention that formal action is necessary as follows: "Nor is it necessary, as is

contended by appellant, that the knowledge or assent of the council be evidenced by some formal corporate act, as by ordinance. Implied contracts, within the scope of the powers of the council, may be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing."

And further: "It was recently held by this court, in a case where the facts as to the knowledge of the board and its assent to the employment of the attorney were not unlike the facts here, that no resolution of the board authorizing the services was necessary. (*Power* v. *May,* 122 Cal. 147 [55 Pac. 796].)"

The language of the court in *Power* v. *May, supra,* on this subject is as follows: "It is true that there was no previous formal resolution of the board authorizing plaintiff to perform the service; there was an understanding to that effect, which for some unexplained reason was not entered upon the minutes of the board. While in all matters of such importance we think the board should act formally by resolution spread upon the minutes, still, as they had the power to act and the services were performed, and the board did in fact subsequently approve the bill for the services and order it paid, we know of no reason why the subsequent ratification and order of payment should not be treated as equivalent to previous authority regularly given."

[2] In the case at bar the board of trustees of the district ordered issued to the plaintiff two warrants in partial payment for the services rendered and to this extent ratified the agreement made by trustee Sesnon with the plaintiff.

In *Reams* v. *Cooley,* 171 Cal. 150 [Ann. Cas. 1917A, 1260, 152 Pac. 293], the distinction is clearly pointed out between contracts requiring formal procedure and cases where action may be maintained upon an implied contract for the value of the services performed. It is there stated: "Where the statute prescribed the only mode by which the power to contract shall be exercised the mode is the measure of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application."

Again, in the case of *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432 [73 Pac. 189], it was held that: "Where the city had received and retained benefit of a water supply although there was no previous express contract as to the

price, the city was liable in *assumpsit* for its reasonable value, and is estopped to deny the validity of the claim, on the ground that it had not passed a lawful ordinance therefor.''

In this case a number of other cases are cited showing the circumstances under which corporations will be liable for the value of the services performed, even though no formal contract of employment has been entered into. The decisions to which we have referred and the cases in those decisions establish the principle that where the statute requires no formal proceeding, a corporation will be held liable as upon an implied contract for services performed when the same rule would be applied to individuals; and that corporations cannot obtain and receive and retain the benefit of services without paying the reasonable value therefor, unless there is some prohibitive rule of law which renders the agreement invalid in its inception. In other words, if there is nothing requiring technical formalities, the absence of technical procedure will not, in and of itself, exempt it from liability. This does not in anywise conflict with the rule that a corporation must act by and through its board of trustees. If the circumstances are such as to lead to the conclusion that it has acted through its board of trustees, then, and in that case, we find nothing in the law which prevents a corporation such as the one under consideration from being held upon an implied contract for services performed for its use and benefit. In stating this we are not overlooking the language of the court in the case of *Zottman* v. *San Francisco*, 20 Cal. 108 [81 Am. Dec. 105], where it is said: ''The mere retention and use of the benefit resulting from the work, where no such power or freedom of election exists, or where the election cannot influence the contract of the other party with reference to the work performed, does not constitute such evidence of acceptance that the law will imply therefrom a promise of payment.''

The language just quoted must be read in view of the circumstances and facts being considered and the illustration given of services performed where there have been no negotiations therefor of any kind whatsoever. It must also be borne in mind that the trustees of the district, defendants herein, had knowledge of the progress of the work, of the bills being presented but did not take it upon themselves to go upon the premises and ascertain just how the

work was being performed or whether it was being performed to the best advantage of the district or in the most expeditious manner. All these matters were left to the judgment of the contractor or the captain in charge of the dredger. [3] "A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used." 13 C. J. 558.

[4] Under this rule, it being left entirely to the contractor to do the work and no directions being given by the trustees, it would appear that whatever was reasonably necessary under the circumstances to be done in order to perform the services would be included. There was no authority given the plaintiff or his captain to turn water into the canal. The captain, in his testimony, stated that that was a hazard to the district which he did not feel like placing upon the shoulders of his employer. This is not his language, but is the substance and meaning thereof. Upon this question, the court having found the reasonable value of the work to be as alleged, we think the defendant is bound. The appellant raises the further objection that there can be no implied contract herein by reason of the provisions of sections 2309 and 2310 of the Civil Code, in that the authorization in the first place must have been in writing and the ratification thereof could only be had by an instrument in writing. This is based upon the further contention that, under subdivision 4 of section 1624 of the Civil Code, the value of the services being more than $200 the agreement must be in writing. [5] This contention is untenable. A contract for services or employment does not come under this section. (*Wilson* v. *Morton,* 85 Cal. 598 [24 Pac. 784]; *Ryan* v. *Walker,* 35 Cal. App. 116 [169 Pac. 417], and *Flynn* v. *Dougherty,* 91 Cal. 669 [27 Pac. 1080].) In view of what we have said, we think the language of this court in *Commercial S. Co.* v. *Modesto Drug Co.,* 43 Cal. App. 162 [184 Pac. 964], applicable. "It would be deemed a hard rule . . . if the courts could not . . . hold that a corporation is bound by a contract made under such circumstances as characterized the making of the contract in the present case. But the books are replete with cases holding that where it appears that a corporation is but the instrumentality through which an individual for convenience transacts a particular kind of business, 'not only equity, looking

through form to substance, but the law itself, would hold such a corporation bound.'"

And further: "And where authority to do some particular act, which is included in the ordinary affairs of such a corporation, is not specifically given to any particular officer, and the performance of which is not specifically inhibited to the person authorized to manage its affairs generally, the intention of the board of directors to confer upon the person or officer in whom is vested the immediate direction or control or management of the affairs of such corporation authority to perform such particular act will be inferred from the general authority so given."

In the instant case there is nothing which takes the defendant from under the general rule as to implied contracts or the general rule relating to informal contracts where the services had been rendered and the benefits received with knowledge thereof or the means of rceiving knowledge thereof, that an implied contract should be inferred and the right to maintain an action for the reasonable value of the services should be upheld.

It follows that the judgment of the trial court should be affirmed and it is so ordered.

Finch, P. J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1924.

All the Justices concurred.