[No. 22770.   Department One.   April 22, 1931.]

T. E. BRADLEY, *Respondent,* v. CONSOLIDATED SILVER
MOUNTAIN MINES COMPANY, *Appellant.*[1]

¹Reported in 298 Pac. 324.

*W. C. Losey,* for appellant.
*F. Leo Grinstead,* for respondent.

MAIN, J.—This action was brought to recover damages to the plaintiff's cattle, caused by drinking water which had been polluted by the tailings from a mine and mill operated by the defendant. In the complaint there are three causes of action, separately stated. The cause came on for trial before the court and a jury, and at the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof, and moved for a dismissal of the action, which motion was overruled. The cause was submitted to the jury, which returned a verdict finding for the plaintiff upon the first cause of action in the sum of $1,050; on the second cause of action, three hundred dollars; and on the third cause of action, one hundred dollars. The defendant moved for judgment notwithstanding the verdict, and in the alternative for a new trial, both of which motions were overruled, and judgment upon the verdict was entered, from which the defendant appeals.

The appellant is a corporation owning and operating the Daisy mine, located in Stevens county, and also owning a number of mining claims. In connection with the operation of the mine, there is a reduction plant. The ore taken from the mine has an arsenic content of about four per cent. The respondent owns and operates a dairy ranch, which is located to the west of appellant's mine. In 1922, the appellant, by quit claim deed, conveyed to the respondent the grazing and pasture rights upon certain of its mining claims specified in the deed. This deed provided that any use of the premises conveyed made by the respondent would

be at his own risk; that the appellant would so carry on its operations as to diminish and minimize to the least possible degree any damage being done to the stock of the respondent; and that, should any damage be done "through the negligence of the first party [appellant], it would be liable therefor." Subsequently, the respondent enclosed by fence a part or all of the lands covered by the deed, and pastured thereon his herd of dairy cows and other cattle.

A short distance west of the mine and mill is a spring and small stream of water out of which the cattle drink. Tailings from the mill were permitted to be carried to the west by waste water until they entered the stream from which the cattle drank. In the year 1926, a number of respondent's cattle became sick, and he called a veterinary to examine and treat them. The same thing happened in the years 1927 and 1928. The first cause of action set out in the complaint is for the damage sustained during the year 1926; the second, for the year 1927; and the third, for the year 1928.

The appellant's principal contention is that there is no substantial evidence to sustain the verdict of the jury upon any of the causes of action. In this connection, it is said: (a) That there is no substantial evidence that the cattle were affected by arsenic poisoning; (b) that, if they were so affected, it is not shown that the poison came from the defendant's plant; and (c) that there is not sufficient evidence to take the question of negligence to the jury.

Upon the question of whether the cattle were affected by arsenic poisoning, the evidence, as upon the other questions, is in direct dispute. The veterinary called by the respondent to examine and treat the cattle testified that, in his opinion, the cattle had been poisoned, and that, although the poison might have been one of three kinds, he was of the view that it was arsenic. He

treated the cattle for this ailment, and they responded to the treatment. After examining the conditions at the mill plant, and the water supply from which the cattle drank, the veterinary testified positively that, in his opinion, the cattle were affected by arsenic poisoning. The appellant assails the testimony of this witness on the ground of lack of competency, which contention will be later herein considered.

On the question of whether the poison came from the mine and milling operations, the evidence shows that, prior to the years named, before the cattle drank water out of the particular stream, they had been healthy and not affected with any ailment, and that, subsequent to the years mentioned, after the respondent had constructed a fence, so that his cattle did not drink from the water into which went the tailings from the mill, the cattle were free from any ailment. Two other farmers, whose cattle grazed near the milling plant, testified that their cattle had been affected in the same way. This evidence, when considered with other testimony in the case, was sufficient to take to the jury the question as to whether the poison came from the mine.

Whether the appellant was guilty of negligence in permitting the tailings from the mill to pass into the spring or stream from which the respondent's cattle drank, was also a question for the jury. The jury had a right to find that the appellant, in the exercise of reasonable care, and at no considerable expense, could have disposed of the tailings from the mill so that they would not have entered the stream mentioned.

As already indicated, the appellant contends that the veterinary called to examine and treat the cattle was not competent to testify as an expert witness. As to his qualifications, he testified that he started practicing about forty years ago; that his first

preparation was in chemistry; that he had secured and studied text-books; that he practiced for ten or twelve years in Kansas, and had some practice in Indiana; that his practice as a veterinary was general; that he had a permit to practice in the state of Kansas, and had done veterinary work in the state of Idaho; that he had had experience in treating or examining cattle affected with arsenic poisoning; that since 1910, when he located in Stevens county, he had practiced only when called upon by his neighbors, and without compensation; and that for the past ten or fifteen years he had had a good many occasions to look into the effect of poison.

Under the facts summarized, which are set out in the record more in detail, the testimony of the witness was competent, and its weight was for the jury to determine. In 11 R. C. L., page 574, it is said:

"The test to be applied in determining the competency of a witness to testify as an expert is implied in the definition of expert evidence. He must have acquired such special knowledge of the subject matter about which he is to testify, either by study of the recognized authorities on the subject or by practical experience, that he can give the jury assistance and guidance in solving a problem to which their equipment of good judgment and average knowledge is inadequate. If he can qualify under this test he may testify, otherwise not. The question is largely one of judicial discretion, and the appellate court will not order a new trial for error in passing on the qualifications of a proposed expert witness, unless the error is clear and involves a misconception of the law; but if the ruling clearly constitutes an error of law it may give cause for a new trial."

The appellant complains of the evidence of the two farmers whose cattle were affected similarly to those of respondent, and says that their evidence should not have been admitted. The record shows that

the testimony of these witnesses went in without objection, and, this being true, the question is not here for review.

■ ■ Finally, it is contended that the respondent, in using the pasture land for grazing purposes, was in the same position as a licensee, and that the appellant owed him no duty except not to wantonly or willfully injure him by poisoning his cattle. To this contention there are two answers. One is that the respondent was making use of the lands by virtue of the quit claim deed executed by the appellant, and therefore was not a licensee. He was in possession by virtue of the contract, which recited that the appellant would be liable for any damage done through its negligence. The other answer is that the cause was submitted to the jury upon the theory of negligence, and no exception was taken to any of the instructions.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.