[No. 25062. Department One. July 25, 1934.]

A. S. STUSSER, *Appellant*, v. JOSEPH GOTTSTEIN, *Respondent*.[1]

[1]Reported in 35 P. (2d) 5.

*Eimon L. Wienir,* for appellant.

*Bausman, Oldham, Cohen & Jarvis* and *Perry R. Gershon,* for respondent.

STEINERT, J.—This is an action to recover moneys paid under a written agreement, by the terms of which refund was to be made by the payee to the payor upon the giving of a specified notice by the latter. Trial by jury resulted in a verdict for the payee. Motion for new trial having been denied, judgment was entered on the verdict, from which the payor has appealed.

The parties to this litigation had for a long time prior to the action been intimate friends, and had sustained frequent business relations with each other. In 1926, they became associated together in the operation and management of North Pacific Finance Corporation, which conducted an investment business. While so associated and engaged, the parties entered into a written agreement with each other. That agreement forms the basis of this action. It reads as follows:

"September 6, 1928.

"In consideration. of A. S. Stusser purchasing jointly with myself a certain assignment of lease dated August 20, 1928, from the Arjo Investment Company, which is recorded on February 19, 1925, Volume 48 Book of Leases, page 472, I agree to refund A. S. Stusser any amounts paid by him on said lease on or before June 30th upon five days notice.

"Joseph Gottstein."

The Arjo Investment Company mentioned in the agreement was a corporation previously organized by respondent and his brother-in-law. Each held a one-half interest therein. In October, 1925, that corporation acquired, for a consideration of five thousand dollars, a ninety-nine year lease on certain unimproved real estate in Seattle. The lease called for the payment, by the lessee, of a graduated annual rental, and also taxes, assessments and certain other charges.

In August, 1928, just shortly before the above agreement was entered into, respondent had offered to sell

to the appellant a one-half interest in the lease for thirty-five hundred dollars. Respondent apparently believed at that time that the lease could be readily resold at an early date and at a handsome profit; at any rate, he so expressed himself to appellant. There is a serious dispute as to some of the events that led up to the making of the agreement, and also as to certain occurrences that followed it.

According to appellant's version, he took respondent's proposition under consideration and made an investigation of the property covered by the lease, but, after such investigation, concluded that he would not enter into the proposed deal. He therefore declined to accept respondent's offer. Thereupon, respondent made the proposal that, if appellant would buy a one-half interest in the lease, respondent would guarantee to protect him against any loss that he might sustain. Appellant agreed to accept the offer, provided that the transaction was to be considered as a loan to respondent. Upon this basis, the agreement was thereupon executed.

An assignment transferring the lease from Arjo Investment Company to appellant and respondent jointly had already been executed and delivered to appellant at the time that the negotiations first began. After their culmination in the written agreement, appellant filed the assignment for record on September 7, 1928. About the same time, appellant paid to Arjo Investment Company the sum of thirty-five hundred dollars. Thereafter, appellant paid the company other sums, the same being one-half of the annual rental, taxes and assessments. The total amount thus paid by appellant, and for which this action was brought, was $4,824.14.

On May 31, 1929, which was the date of his last payment, appellant orally notified respondent that he

elected to demand a refund of all the moneys paid by him, and at the same time advised respondent that he was prepared to execute an assignment, release, deed or whatever might be necessary to transfer his interest in the lease to respondent or to whomsoever respondent might designate. Respondent was unable to make refund at the time that the notice was given to him, but told appellant that he would do so just as soon as he had closed a contemplated deal. Similar promises were reiterated by respondent on frequent occasions thereafter, but none were ever fulfilled.

Respondent's version of the transaction is quite different from that of the appellant. He denied that there was ever anything said about a loan between the parties, and insisted that the agreement was nothing more than appears upon the face of the writing. According to his story, the parties contemplated a joint venture with respect to the purchase of the lease from Arjo Investment Company, with the option to appellant of terminating it on June 30, 1929, by giving five days' notice, and having his advances refunded. His contention also was that not until October, 1929, when the general financial crash loomed, did appellant notify him that he wanted his money back. Although conceding that he had frequently promised appellant that he would see that appellant got his money, he was positive that he had told appellant that he was not recognizing any legal liability for reimbursement.

The ambiguities of the written agreement are apparent on its face. It may be read as an agreement to enter into a joint enterprise, or it may be construed to be simply a loan agreement. It is also equivocal in several respects in its provisions relative to the refund of payments. Court and counsel both recognized the imperfections of the agreement, and for that reason

considerable parol evidence was offered and admitted touching the matters just referred to.

Under the situation presented by the evidence, the court instructed the jury that it should determine the true meaning of the contract and the obligations of the parties thereunder that the principal rule in the interpretation of contracts is to ascertain the true intention of the parties; and that where the written contract is vague and uncertain in its terms, parol evidence is to be allowed, not to vary, but to explain the intent and purpose of the parties at the time of entering into the written agreement. The instructions so given were not excepted to by either party, and we conceive that they stated the law correctly. *Carstens v. Earles,* 26 Wash. 676, 67 Pac. 404; *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775; *Dioguardi v. Haddow,* 167 Wash. 62, 8 P. (2d) 978.

But in a subsequent instruction, the court told the jury that the arrangement entered into between appellant and respondent with regard to the joint purchase of the leasehold in question constituted, as a matter of law, a joint venture rather than a loan agreement. Appellant assigns error upon this instruction. In our opinion, the instruction removed the very issue that formed the crux of the case, and took from the jury the primary question that it was called upon to decide.

"It is conceded that the general rule is that the construction of written instruments is a question of law for the courts. We think it may also be conceded that there are certain well defined exceptions to this rule—as, where the identity of the subject-matter of a document, or its construction, depends upon collateral facts or extrinsic circumstances, the inferences from such facts, when they are proven, should be drawn by the jury. Where it is an enforcible contract, and the ambiguity arises as to the relative responsibilities and

duties of the respective parties under the contract, which responsibilities and duties can be determined either by proof of the meaning of the terms used in the contract or by a showing of the circumstances surrounding the parties with reference to the subject-matter of the contract at the time it was entered into, and there is any controversy over such facts, undoubtedly such contract should be submitted to the jury, and its meaning determined by that tribunal by aid of such explanatory testimony." *Durand v. Heney*, 33 Wash. 38, 73 Pac. 775.

In *Hoge v. George*, 27 Wyo. 423, 434, 200 Pac. 96, 18 A. L. R. 469, involving a similar question, the court said:

"Where the existence of the relationship [joint venture] is in issue, and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of the enterprise for their joint profit, the question is pre-eminently one for a jury."

Here there was a sharp and divergent issue as to whether the agreement was one of joint venture or a mere loan. The determination of that issue had a very important bearing upon the consequent rights and obligations of the respective parties. It therefore was a question for the jury, and not for the court, to decide. The giving of the instruction was error.

The appellant next assigns error upon two instructions on the subject of tender. In the first of these instructions, the court told the jury that "under the agreement herein" appellant was bound to make a tender (actual production of an instrument constituting a conveyance of appellant's interest, and an offering thereof to the respondent) not later than June 30, 1929, unless it appeared from the evidence that the tender would not have been accepted. In the second of these instructions, the court advised the jury that, if the appellant made a tender, but conditioned it upon

refund being first made by respondent, then the verdict should be for the respondent. In this second instruction, the court also told the jury that a mere offer to tender was not equivalent to actual tender, and that, if appellant did nothing more than to *offer* to tender, the verdict should likewise be for respondent.

The appellant contends that, under any theory of the case, these instructions were incorrect; that, in no event, was anything more required of appellant than notice and offer to perform; and that failure to tender an assignment or conveyance could in no way affect his cause of action, whatever its nature. This contention of appellant is too broad, and we do not agree with it in its entirety.

If, in the light of all the evidence, the agreement was one of joint venture, as the jury was told that it was, then appellant was the owner of a one-half interest in the lease, which, upon proper notice given by him, he could compel respondent to purchase for the amount of the advancements made by appellant. But appellant could not place respondent in default, or compel payment by him, until he himself had made a valid tender of a proper conveyance. While the written agreement contains no express provision for such conveyance, it is necessarily implied, for it could not have been intended that appellant should have the return of his money and at the same time keep the property which he had received under an agreement considered as a joint venture. Necessary implication is as much a part of an instrument as though that which is so implied were plainly expressed. *McCartney v. Glassford,* 1 Wash. 579, 20 Pac. 423; 6 R. C. L. 856.

Considering, then, the agreement in the light of both its express and its necessarily implied provisions, we have a situation where, upon the giving of the required

notice by appellant, there was a duty on the part of the respondent to purchase appellant's interest in the lease, and a corresponding duty on the part of appellant to convey his joint interest therein. These obligations were dependent and concurrent, and as such were to be simultaneously performed, in the absence of a contrary understanding or agreement. Williston on Contracts, § 835, p. 1593; 29 Am. & Eng. Enc. of Law (2d Ed.) 689. Our decisions are in line with this rule. *Underwood v. Tew,* 7 Wash. 297, 34 Pac. 1100; *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399; *Stein v. Waddell,* 37 Wash. 634, 80 Pac. 184. Where covenants are dependent and concurrent, neither party may compel performance by the other without performance on his own part; and where either takes the initiative to compel performance by the other, he must show that he has first made proper tender of that which was to be performed by him. The instructions given by the court were not, therefore, incorrect, under respondent's theory of the case.

But the vice of the instructions lies in the fact that the court assumed that respondent's theory of the case was the only theory to be considered by the jury. It told the jury that "under the agreement herein" appellant was, in any event, bound to make the tender. As has already been stated, appellant's theory and evidence were that the transaction constituted a loan agreement. If the transaction, considered in the light of all the evidence, amounted simply to a loan agreement, then the assignment to appellant of an interest in the lease was merely in the nature of a security for the loan. Particularly was this so from the time that appellant gave notice that he elected to take a refund of his money, for, if the agreement ever partook of the nature of a joint venture at all, it ceased to be such when appellant gave the required notice.

While respondent would have been entitled to a conveyance immediately upon his making proper refund, it was not necessary for appellant to make a tender of his security at the time of demanding payment of the debt. A pledgee has the right to retain the property pledged until the debt is fully satisfied or has been otherwise discharged. 21 R. C. L. 650. So, also, a creditor holding collateral, though bound to surrender the collateral at the time when he receives payment of the debt, may sue on the debt without first tendering the collateral. Williston on Contracts, § 835, p. 1593. Under our statute, mortgages, whether chattel or real, are not required to be satisfied or released until the amount due has been paid. Rem. Rev. Stat., §§ 3787 and 10614. The instructions were, therefore, incorrect to the extent that they made a preliminary tender by appellant obligatory even though the transaction were only a loan.

The appellant assigns error upon the giving of several other instructions, but we do not think that there is any merit in any of the assignments, and hence we pass them by without further discussion.

Appellant next complains of the admission in evidence of a letter written by respondent to appellant about three years subsequent to the making of the above agreement. The letter contained respondent's version of certain phases of the case. The receipt of the letter was first suggested by appellant in his direct examination, at which time respondent's counsel demanded its production. Appellant objected on the ground that it contained a self-serving declaration of respondent. After some colloquy between counsel, the court struck the testimony concerning the letter. Upon cross-examination of appellant, respondent's counsel renewed the inquiry concerning the letter, and con-

cluded by offering the missive itself in evidence. Over appellant's objection, the letter was admitted.

This, we think, was error. The evidence offered by appellant in relation to the letter having been stricken, there was no basis for the introduction of the instrument by respondent on cross-examination. Of itself, it was but a self-serving declaration. A party can not offer in evidence his own declaration relative to the subject in controversy, nor may a witness corroborate himself by his own self-serving declaration. *Moritz v. Herskovitz*, 46 Wash. 192, 89 Pac. 560; *Munson v. Baldwin*, 93 Wash. 36, 159 Pac. 1070; 10 R. C. L. 1150.

Appellant next assigns as error the admission in evidence of parts of a certain book of account. It appears from the record that, when the book was first presented, respondent offered several of its sheets in evidence, whereupon appellant objected to their admission. The court reserved its ruling, and both counsel thereafter interrogated respondent's witness concerning various sheets of the book. Appellant's counsel specifically requested that he be allowed, and was permitted, to interrogate the witness on all matters that he had testified to concerning the book of account. He stated that he would present his objections to the documents at the conclusion of the examination thereon, but no objections were thereafter made, and appellant himself offered in evidence certain portions of the same book. No objections having been made at the conclusion of the testimony, when the exhibits were finally admitted, no error can now be predicated upon their admission. *Bradley v. Consolidated Silver Mt. Mines Co.*, 162 Wash. 198, 298 Pac. 324.

Appellant's final assignment of error is based upon a series of rulings of the court restricting the evidence concerning a deed which appellant had introduced as an exhibit. It appears that, on January 7,

1931, Arjo Investment Company quit-claimed all its interest in the leased premises to Frank Hergert, the owner of the land. Appellant interrogated respondent concerning this deed preliminary to its introduction. Upon objection of respondent, the court expressed the view that the evidence concerning the deed raised an immaterial issue. Because of the length to which the inquiry had gone, however, the court reluctantly permitted the deed to go in, but declined to permit further evidence concerning the surrounding facts and circumstances.

Appellant complains because of the limitation thus imposed. In our opinion, the deed should not have been admitted at all. Neither of the parties to the deed was a party to this action. Moreover, Arjo Investment Company had no interest in the lease at the time that it gave the quitclaim deed, because it had previously assigned its interest therein to the appellant and respondent. The exclusion of the deed would necessarily, upon a new trial, dispose of the question of further evidence concerning it.

One other question remains. Respondent contends that its motion for a directed verdict should have been granted, because appellant had failed to prove his damages. This contention is based upon the theory that appellant could recover only the difference between the amount advanced by him and the value of the one-half interest in the lease which he still retained. This contention loses sight of appellant's theory of the case, namely, that the arrangement between the parties was a loan agreement and not a joint venture. Upon appellant's theory of the case, he would be entitled to recover the full amount of the loan. *Wallace B. & T. Co. v. First National Bank*, 40 Idaho 712, 237 Pac. 284, annotated in 50 A. L. R. p. 316, where the authorities

upon the subject are collected. The motion for a directed verdict was properly denied.

For the errors above noted, the judgment is reversed and the cause remanded for a new trial.

MILLARD, MAIN, MITCHELL, and BLAKE, JJ., concur.