ARCH SELLERY, INC., a Wyoming Corporation, and Lierd and Miracle, a co-partnership, Appellants (Defendants below),

v.

Curt SIMPSON, doing business as Natrona Roofing Company, Appellee (Plaintiff below).

No. 2980.

Supreme Court of Wyoming.

April 11, 1961.

Houston G. Williams, Casper, for appellants.

Harry E. Leimback, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This case is before us for the second time. In 1957 plaintiff Simpson, a roofing contractor, sought to foreclose a labor and material lien against defendants, Arch Sellery, Inc., then bankrupt, general contractor, and the owners of the building, Lierd and Miracle. Defendants resisted on the ground that Simpson's work had been substantially completed more than ninety days before the lien was filed, contending that the sealing, the only work done within the ninety-day period, was trivial and slight, done only for the purpose of either keeping alive or reviving the lien. The district court gave judgment for plaintiff. On appeal, this court noted, Arch Sellery, Inc. v. Simpson, Wyo., 346 P.2d 1068, that the

plaintiff had pleaded the furnishing of labor and material pursuant to an oral contract but at the trial had made no point of the contract and had recited no details thereof. A paper termed "Sub Contract Agreement" and signed by Mrs. Simpson and Sellery was introduced in evidence, but this was merely a Ditto form applicable to all subcontractors and containing no provisions peculiarly applicable to the roofing. The point in issue was the timeliness of the lien filing required to be made within ninety days after the accrual of the indebtedness, which in this case depended upon certain sealing of the roofing. We held that since the important part of the contract was not in evidence it was improper to rely upon the testimony of necessity and practice and accordingly remanded the cause for further proceedings.

■ At the ensuing supplementary hearing, defendants objected to any testimony of necessity and practice, insisting that under this court's opinion the plans and specifications constituted the contract and were not susceptible of explanation. The trial court overruled the objections and admitted evidence of practice. A judgment was entered decreeing the lien to be valid, and defendants have appealed a second time. The trial court properly interpreted our former opinion, the context of which fairly indicated that since the important part of the contract was not in evidence testimony concerning necessity and practice could not be accepted. In retrospect we think our ruling was correct, for the exclusion of evidence of what is considered proper in an industry from the interpretation of a contract would constitute the employment of a strait jacket, but to allow such evidence without reference to the nature of the contract might wholly nullify that to which the parties had agreed.

The plans and specifications which we had thought might well clarify the matter were disappointing in their lack of reference to the problem in issue. The only direct allusion to the roof in the specifications was in the addendum, "Roofing Contractor must provide written 10 year guarantee against faulty workmanship or material." The plans said nothing about sealing as such but contained the wording, "provide roof drains of required size and number to handle run-off," "20 yr. built-up roof," and several drawings of "G. I. gravel stop," termed by one of the witnesses as a "cant."

■ This court said in Barlow v. Makeeff, 74 Wyo. 171, 284 P.2d 1093, that in construing and determining a contract the intention of the parties and the meaning are gathered primarily from the contents of the writing itself if it is not ambiguous. However, it is well settled that a contract includes not only what is stated expressly but also that which of necessity is implied from its language. Severson v. Barstow, 103 Mont. 526, 63 P.2d 1022; Stusser v. Gottstein, 178 Wash. 360, 35 P.2d 5; Hutchinson v. Reclamation District No. 1619, 67 Cal.App. 488, 227 P. 787. When a building contract contains a warranty either express or implied that the work will be sufficient for a certain purpose, the contract is not performed until the work accomplishes the agreed result. Glass v. Wiesner, 172 Kan. 133, 238 P.2d 712; City of McPherson v. Stucker, 122 Kan. 595, 123 Kan. 584, 256 P. 963. Parties who contract on subject matter concerning which known usages prevail incorporate into the agreement such implications if nothing is said to the contrary. Simons v. Stokely Foods, Inc., 35 Wash.2d 920, 216 P.2d 215.

Testimony of Volk, the inspecting engineer, and Pancratz, a roofer, was briefly quoted in the previous opinion, 346 P.2d at page 1070. According to the plaintiff, two portions of the roof required sealing, the scuppers to which he and May gave attention on March 29 and the gravel stops which were then too wet to be sealed. In the supplementary hearing, Simpson said that he was a Ruberoid applicator and followed their specifications in this installation, that the "scuppers, have got to be completely sealed," and that you seal the roof or "It will leak." Jacobs, an inspector and manufacturer's representative for the Ruberoid Company, admitted that the plans

and specifications were vague and uncertain as to the requirement of sealing, and in discussing the general situation made several statements which are significant.

"Q. And there is nothing in the wording of those specifications which require Mr. Simpson, as the roofing subcontractor, to seal the gravel stops? A. Well, absolutely, if you are putting on a 20 year specification, you are going to take care of that or you haven't got a 20 year roof, you have got maybe a half a year roof.

"Q. Well, where does it say— A. It is a general practice on any 20 year specification why would you specify a 20 year roof if the weakest part of that roof is only going to last maybe five days?

"Q. Well, I am asking you to tell me. A. A roof has to be completed and waterproofed if it is going to be a 20 year specification, to last twenty, it can't start leaking the following year."

Wehrli, an architect called by defendants, said that the plans and specifications were vague and contained no requirement about the sealing. He was asked:

"Q. Now it is impossible, Mr. Wehrli, is it not to put on a roof described here by going by the specifications, you would have to go elsewhere to find out what the specifications were for a 20 year 15 pound felt built up roof, would you not? A. Well, the specifications call for a certain roofing, I don't know what you would do about a flashing in this case, have to do something, I suppose.

\* \* \* \* \* \*

"Q. \* \* \* bedding or something is necessary over those gravel stops, is that not correct? A. Yes, that is true.

"Q. \* \* \* Now do you agree with the other expert if that isn't done, bedding or a felt sealing of some kind, that it will leak down the wall? A. It sure will.

\* \* \* \* \* \*

"Q. If I were to tell you that it [a scupper] just set on the finished roof would there be the necessity of sealing that in some manner? A. To make a good job, yes.

\* \* \* \* \* \*

"Q. And your answer \* \* \* regarding whether or not it might be necessary to do certain things around the scuppers had relation to the actual completion of the job so that it would be a satisfactory job, is that right? A. That's right, that is a normal job, I don't think you would have to do it to comply with these specifications because they don't tell you you have to do it."

█ It is apparent from the authorities which we have previously mentioned that evidence regarding the custom, usage, and practice in the building industry was admissible to interpret the meaning of the contract between the parties. Moreover, the trial court's ruling in that respect was in conformity with the opinion heretofore rendered.

Defendants argue that the case does not turn upon the question of the sealing being a part of the contract since the work was substantially completed more than ninety days prior to the time of the filing of the lien. They maintain that the construction placed upon the contract by the parties themselves (as such actions were delineated in our prior opinion, 346 P.2d at page 1070) shows such completion. Defendants also urge that the citation of General Fire Extinguisher Co. v. Schwartz Bros. Commission Co., 165 Mo. 171, 65 S.W. 318, in our previous opinion, 346 P.2d at page 1069 shows this court's recognition of the doctrine of substantial completion.

█ As a reading of our former opinion will reveal, neither of these assumptions is warranted since the gist of our discussion was that in order for the lien to be valid the sealing must be based upon contract requirements. In that connection it may be well to consider the following language of the Missouri case, 65 S.W. at page 321:

"* * * The counsel are * * * correct in their position that when the building is substantially completed, and the contractor tenders it as complete, and it is accepted as such by the owner, the contractor cannot afterwards, at his own instance, and against the will of the owner, perform some part that was called for in the contract, but which had been omitted in the construction, and thereby extend the period for filing his lien. And it is also a correct interpretation of the law that where the building is substantially completed, and so treated by all the parties, and delivered as such by the contractor to the owner, with only a few trifling particulars remaining to be done, and as to those the owner accepts the promise of the contractor to do them afterwards, the promise to do being accepted in lieu of the actual deed, the time for filing the lien begins to run from the date of such delivery of the building to the owner. * * * On the other hand, it is equally clear that the limitation does not begin to run until the last item called for by the contract is furnished, or the last work under it is done."

Basically then, any so-called doctrine of substantial completion, at least as formerly mentioned, cannot be divorced from the contract between the parties. The important determination is the question of the triviality of the items which are later supplied. A good analysis of the question is found in Wilcox v. Cloward, 88 Utah 503, 56 P.2d 1, 6, 7, where it is said:

"* * * Trivial or minor adjustments made casually or long after the main work is completed cannot be used to tie on to as the last labor done or materials furnished. Especially is this true if they are made for that purpose. But even small jobs where bona fide made to complete a contract which the claimant had the duty to complete, if not made too long after the main work is completed, especially if a part of a chain of similar or larger tasks performed in the process of finishing up or tapering off, will be sufficient to extend the time for filing the notice of lien. * * * The test of trivial imperfections was said to be as follows: 'Are the imperfections in the performance of the work so trivial in character as to permit the contractor to recover for substantial performance?' * * *"

It is not necessary, however, to refer to other jurisdictions for the solution of this problem, for in Sawyer v. Sawyer, 79 Wyo. 489, 335 P.2d 794, 797, 798, Judge Harnsberger dealt with the problem at some length and therein pointed out that many factors were to be considered, not the least of which was the actual completion of the contract and the good or bad faith of the person claiming to have completed. He concluded the opinion with a statement which we think is significant here:

"Our reaction to the authorities called to our attention, as well as from our own independent research, convinces us that in close cases where the determination of the critical date involves installation of very minor items or performance of trifling service, the ultimate factor is the reaction of the trier of fact to conflicting testimonies as they may have been justly considered in the light of all the circumstances which had bearing on the question of good faith and necessity to prolong the period of construction. * * *"

Even though defendants' theory of the case is plausible, the trial court found against them, and it has long been recognized that when a case is tried to a court without a jury if different conclusions can be rationally drawn from the evidence the case is one for the trial court's determination. Sowers v. Iowa Home Mutual Casualty Insurance Company, Wyo., 359 P.2d 488; Hench v. Robinson, 75 Wyo. 1, 291 P.2d 417. Considering that which was presented at the original and supplementary hearing, we think there was substantial

evidence to show that the sealing was in fact an integral part of the contract.

Affirmed.

Mr. Justice HARNSBERGER, whom Mr. Chief Justice BLUME joins, concurring.

The point upon which decision in this case turns is the date the ninety-day period commences. There is no question of an extension of that time. The date of completion of the contract to provide a roof was the date the ninety-day limitation began. To merely place materials upon the top of a building does not place a roof upon it. Those materials must be so laid as to protect the building from the elements or else it fails of being a roof. Materials left unsealed and not water tight do not conform to this requirement. When evidence showed weather conditions prevented the earlier sealing and completion of the roof, the delayed date of completion of the contract was sufficiently explained. When the owner elected to call in another contractor to seal the roof that acknowledged the contracted work had not been completed. It also relieved the contractor from any further duty to complete his contract. However, the ultimate completion of the roof by sealing, even though performed by another, started the running of the time within which the filing of the lien was required.

Any prospective purchaser of the property has ample opportunity to protect himself from the lien encumbrance by simple inquiry.

Mr. Justice McINTYRE, dissenting.

Hereafter no purchaser can buy real estate in Wyoming, no lending institution can make a loan thereon and no title insurance company can insure the title thereto with reliance upon the 90-day lien affidavit which has been used in this state from time immemorial.

The lien as filed and claimed in this case covers only work and materials furnished and billed for on or about October 31, 1956. Not a single item, lienable or otherwise, was added to the account subsequent to that date. On December 12, 1956 Natrona Roofing Co. gave a ten-year guarantee on the roof. Then on March 29, 1957 Simpson claims Mr. Lierd called and said his building was leaking on the west wall. Regarding that call Mr. Simpson testified: "Well, I took it for granted it was the Shell Building, and I went down there, and sure enough it was a-leaking on the west wall bad."

He then related that he and Mr. May, the new owner of Natrona Roofing Co., used about a gallon of plastic cement along that west wall. He testified that neither he nor Mr. May did any further work after that. Whether the work on March 29, 1957, requiring less than an hour in time, was done in fulfillment of the guarantee or gratuitously or as a separate job, plaintiff did not pretend to say. It is apparent, however, that such work was not added to the October 31, 1956 account. It was not claimed in the lien filing as an additional lienable item.

Thus, it seems to me, the account lacked continuity from October 31, 1956 to March 29, 1957—or to such other date as the majority opinion purports to fix as the date upon which the original indebtedness accrued. Such continuity would obviously be essential to make the filing on May 8, 1957 effective. Inasmuch as the last item included in the lien statement, as filed, dated back to October 31, 1957, more than 90 days prior to the May 8, 1957 filing, it cannot be said that plaintiff has complied with the provisions of § 29–11, W.S.1957, in asserting his lien.

If the time which is restricted by the statute can be thus indefinitely extended by acts of this kind, the (90-day) limitation fixed by the legislature in which to file this class of lien can and will be utterly and completely defeated, so that in every case where a right to file a lien has ever existed, the title to the property may for an indefinite period remain in an unsettled and not ascertainable condition, with reference to the character and extent of the mechanic's lien which may be claimed against such property. For this statement and holding see Gatchell v. Henderson, 156 Neb. 1, 54 N.W.

2d 227; Disbrow & Co. v. Peterson, 136 Neb. 719, 287 N.W. 220; Gem State Lumber Co. v. Witty, 37 Idaho 489, 217 P. 1027. Also see 57 C.J.S. Mechanics' Liens § 144, p. 661, for the following:

"After a contract is substantially completed there must be no unnecessary or unreasonable delay in fully completing the work; and the time for filing a lien cannot be extended by a delay for a considerable time to do a small piece of work necessary to full completion * * *."

To the same effect are Fox & Co. v. Roman Catholic Bishop of the Diocese of Baker City, 107 Or. 557, 215 P. 178, 179; General Fire Extinguisher Co. v. Schwartz Bros. Commission Co., 165 Mo. 171, 65 S.W. 318, 321; 10 Thompson on Real Property (1957 Replacement) § 5217.

We are dealing here with a situation where the owner was not a party to the contract involved and had no knowledge, either actual or constructive, that plaintiff was claiming the obligation and right to do "completion work." In the meantime said owner had accepted the building as a finished job, had paid the original contractor in full and had put a tenant into possession. The requirements of due process of law, if not of equity, should operate to compel the subcontractor-plaintiff to put the owner on notice in some manner, if the subcontractor is going to claim a continuing right, without continuing work and without the knowledge of owner, beyond the statutory 90-day period.