**W. W. HENCH,**

*Plaintiff and Respondent,*

vs.

**W. A. ROBINSON,**

*Defendant and Appellant.*

(No. 2697; December 20th, 1955; 291 Pac. (2d) 417)

2

For the defendant and appellant the cause was submitted on the brief and also oral argument of Warren H. Winter and Robert A. Burgess both of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted on the brief and also oral argument of T. C.

Daniels of Douglas, Wyoming and Paul B. Lorenz of Cheyenne, Wyoming.

4

## OPINION

BLUME, Chief Justice.

This is an action brought by plaintiff W. W. Hench against defendant W. A. Robinson for an accounting arising out of a joint venture in connection with oil and gas leases as hereinafter mentioned. The action was commenced on February 28, 1952.

The case was tried to the court without a jury. The court made a general finding in favor of plaintiff and rendered judgment against the defendant in the sum of $4,789.35 and costs of the action. From that judgment the defendant Robinson has appealed to this court.

On or about March 31, 1948, the plaintiff, the defendant and one C. W. Mack entered into a written agreement which is as follows:

"This MEMORANDUM is merely the basis of an understanding as between W. A. Robinson, known as the party of the first part, and W. W. Hench, and C. W. Mack, known as the parties of the second part, in which the party of the first part, already active in Eastern Wyoming, in the acquiring of oil and gas leases, and will continue therewith, is now and henceforth working in that area only in the mutual interest of all parties hereto in acquiring leases, drilling blocks, development, etc., and will give an accounting to the parties of the second part of all activity accordingly from this date forward.

"Sales of leases, if any, and all other income from this undertaking shall be equally divided between the three parties, each a one-third thereof.

"Title to leases taken shall be in the names of all three parties when practical, or assignments given promptly to comply herewith promptly.

/s/ W. A. Robinson."

Subsequent thereto C. W. Mack sold his interest to the plaintiff herein for $1,250. It is the contention of the defendant that this purchase was made for the benefit of the plaintiff and the defendant. The plaintiff contends that this purchase was conditional and was for the benefit of both plaintiff and defendant only if and when the defendant should pay to Hench the money paid to Mack in the sum of $1,250 plus $604, which the plaintiff advanced in connection with the venture herein.

The written contract was supplemented by an oral agreement to the effect that the defendant Robinson should be paid not to exceed $200 per month. After plaintiff Hench bought the interest of Mack, he undertook to pay this amount. Mack under this agreement paid the defendant the sum of $500 and plaintiff paid the defendant the sum of $3,600, a total of $4,100, which covered the period from March 1948 to December 15, 1949. The intent and meaning of this particular oral agreement is in dispute as hereinafter mentioned. We might mention the fact that the only testimony adduced in the case is that of C. W. Mack, W. W. Hench, and W. A. Robinson.

Counsel for defendant in their brief filed in this court state the issues in the case to be as follows:

"The issues of the case then boil down to (1st) a determination of what interests the Plaintiff and Defendant had in the venture after the interest of C. W. Mack was obtained, (2nd) a determination of what the $200.00 per month, as paid by first Hench and Mack and later by Hench alone, was to cover, and (3rd) whether or not the items shown in the accounting listed by the Defendant are true and correct, and from the accounting, whether or not there were profits from the venture which are due to the Plaintiff."

It is quite apparent from the judgment entered herein that the court found in favor of the plaintiff

on the first two of these issues. The third issue will be mentioned more fully hereafter.

1. The C. W. Mack Interest.

It is agreed herein that the plaintiff paid Mack the sum of $1,250 for Mack's interest. As to whether or not the court's finding that plaintiff was entitled to two-thirds of whatever profits were made from the venture instead of an equal part as defendant contends was correct, must be determined from the evidence. The testimony of the plaintiff on that point is as follows:

"Q. I believe you stated, Mr. Hench, that Mr. Robinson approved of your purchase of the Mack interest? A. Yes, sir.

"Q. Now, where did you have your conversation or discussion, or whatever you might term it, with Mr. Robinson, that I believe you mentioned in connection with the Mack purchase? A. At the Plains Hotel in Cheyenne.

"Q. Did you ever have an agreement with the defendant, Mr. Hench, as to whether you were to share the Mack portion of the deal with him or not? A. I was to share the two-thirds of the Mack portion until he paid me. He was to reimburse me for the lease money that I was out and for the money that I paid Mack, and then we'd go 50-50.

"Q. Then you were to go 50-50? A. Yes, sir.

"Q. When was he to reimburse you? A. Right away. Just right away.

"Q. Did you ever receive any money? A. Never a cent; no, sir.

"Q. Did you have an understanding with him otherwise, as to how you were to share that in the event he didn't pay you? A. Yes, sir, to share two-thirds and one-third.

"Q. Do you recall when you had that agreement? A. No, but it was two, three or four weeks later, when I wasn't getting the money. I asked him for the money two or three times and I never got it. J

told him I would continue on, but I would hold two-thirds.

"Q. Where was that conversation? A. Oh, at the Plains Hotel at Cheyenne.

"Q. Did he say anything at that time about it? A. No, not any more than that he had a deal on, he'd get the money right away; it wouldn't be long.

"Q. Now, did he ever afterward tell you that he would pay you? A. No, sir. Oh, yes. Up until as long as I was paying him money, why, he was going to pay me, but then he never did."

Again later he stated:

"Q. Whenever you paid the lease acquisition costs and rental, was there any agreement as to how the proceeds were to be distributed if the lease were to be sold? A. Money was to be refunded, the acquisition cost, and then split 50-50 *if* and *when* he paid me what he promised to. (Italics supplied.)

"Q. When was that agreement made? A. That agreement was made when I bought out Mr. Mack."

It is quite apparent herein that the court was justified in finding that the purchase of the Mack interest in favor of plaintiff and defendant was conditional upon the defendant reimbursing the plaintiff herein the proper amount.

2.  The $200 Expense Money.

The defendant Robinson contends in this connection that the agreement to pay him $200 per month was for his personal expenses, by which apparently he means his living expenses. The agreement was that he was to be paid *not to exceed $200 per month,* which would seem to contemplate that he was to account for the use of the money in order to discover whether the amount used exceeded the $200 or not. He has made no such accounting, and has ignored it. However, the plaintiff has not insisted on such accounting. The defendant contends that in addition to the $200 he is entitled to

the sum of $1,735.32 for automobile expenses at seven cents per mile; the sum of $832.33 for depreciation on his automobile, and the sum of $1,453.77 for gas, oil, repairs, telephone and telegrams. On the other hand the plaintiff contends that the $200 per month was to pay for defendant's work in procuring leases and selling them, and covers all the items above mentioned. A distinction was drawn in the testimony as to the nature of expenses incurred by the defendant. Both the testimony of plaintiff and the account rendered by the defendant mention "acquisition" costs. These, as indicated by the evidence, consisted of outlay for the purchase of leases, filing fees and rentals. Plaintiff does not contend that these acquisition costs come within the $200 per month, but concedes that the defendant was entitled to deduct these from the receipts. But he contends that traveling expenses, such as above mentioned were covered by the $200 per month. There is nothing in the record to indicate that defendant ever asked for more than $200 per month for his so-called personal expenses until after this case was commenced, although he asked for contribution to the so-called acquisition costs. It is apparent from the amount of the judgment herein that the court sustained the theory of plaintiff. We shall proceed to examine the testimony on that point.

The plaintiff testified in part as follows:

"Q. As you recall, will you state the other terms of the agreement? You said it was partly in writing and partly oral. Were there any other terms? A. We were to put up $200 a month expense money, not to exceed $200 a month, for him to acquire oil and gas leases in the eastern part of Wyoming.

"Q. Did Mack dictate the terms? A. No, sir, not any more than I did. Robinson propositioned that he would do that for $200 a month and we accepted it and gave him the money.

"Q. Will you please tell me, if you can, why the agree-

ment concerning the $200 was not put in the written agreement? A. I don't know. He typed it. It was not to exceed $200 a month.

"Q. You were to pay him, starting on March 21, 1948, not to exceed $200 per month? A. Yes, sir.

"Q. For what? A. For his duties in obtaining oil and gas leases in eastern Wyoming.

"Q. Was that a salary? A. Well, I wouldn't know what you'd call it. It's $200 a month. Call it a salary or grubstake or whatever you want to call it. I've grubstaked prospectors, too, so I'd call it a grubstake."

A pre-trial conference was held in which the court found, as agreed by the parties:

"The plaintiff and Mack in turn agreed to pay the defendant his actual and necessary expenses in the acquisition of said oil and gas interests not to exceed $200 per month."

The defendant later objected to this as a conclusion on the part of the court. It would seem, however, that the testimony above justified the trial court in finding that the $200 covered all the expenses which would be incurred in connection with the oil and gas venture herein other than the so-called acquisition costs. Even conceding that the theory of defendant is plausible, the court by its judgment found against it, and it is a rule of law that when the case is tried to the court without a jury, then if different conclusions can be rationally drawn from the evidence, the case is one for the trial court's determination. Bowden v. Wooden, 125 Cal. App. 115, 13 P. 2d 811; 5 C.J.S. 682 et seq; 4 C.J. 879, notes 85 and 86.

3. Accuracy of the Court's Findings as to Defendant's Accounts.

At the pre-trial conference the court ordered the defendant to set out his accounts in connection with the venture here involved. The defendant complied with the order. We may admit for the purposes of this

case that, as counsel for defendant claim, the defendant made a prima facie showing of the correctness of his account. But his showing was not, of course, conclusive. It is admitted by the parties herein that the total account received by the defendant on account of sales of leases is the sum of $12,482. So the question remains as to what deductions are allowable to the defendant. It may be noted that the plaintiff testified that it was agreed by the parties that they should consult with each other on all matters, but that defendant did as he pleased without consultation. We may also mention that in 48 C.J.S. 835, it is stated:

"As a general rule notice of the sale should be given to an associate so that the latter may have an opportunity to protect his interest in the property."

That would seem to be true at least where the parties agreed that they should consult each other at all times.

The defendant claimed, aside from the gasoline, automobile, etc., expenses heretofore mentioned, the right to deduct from the amount received the sum of $8,485.58, whereas the court allowed him only the sum of $4,385.58. It would subserve no good purpose to examine the discrepancy minutely. The whole matter is one of fact rather than of law and perhaps we should dismiss it without further comment. We might, however, point out that according to the testimony of plaintiff, which the court was entitled to credit, defendant claimed to have paid plaintiff $1,620, when he in fact paid him only $1,043. Defendant failed to give credit for payment by plaintiff of $1,304. Other items disallowed amounted to $430, which upon examination of the evidence we find to be correct. We might also examine two items which were disallowed by the court. One was for $1,750, claimed by defendant to have been paid by him to R. A. Mason as a commission in connection with the sales of the so-called Smith lease. Defendant introduced a letter from R. A. Mason written at Houston, Texas, February 26, 1954, more than four

years after the termination of the joint venture, in which Mason stated that he had received not $1,750 but $1,500, of which he paid $250 to Horace Smith. The Smith lease was sold for $5,200, so that the commission claimed to have been paid would amount to 30 percent, a rather high percentage. Plaintiff did not know of this commission. In the first place the plaintiff should have been consulted according to the agreement. In the second place, the amount is so large that it would have been advisable to have had the testimony of Mason given under oath rather than by a letter. We cannot say that the court was wrong in disallowing this item.

The second item to which we might make reference is the sum of $350 claimed to have been paid to H. D. Howard for "geological service." The defendant had no receipt for this service which would seem to be rather strange if the amount was actually paid. We have some doubt as to this item. But taking into consideration the fact that the defendant's account was inaccurate in many points, and since the credibility of witnesses is for the determination of the trial court, we do not find any sound reason for modifying the judgment of the trial court, and it is accordingly affirmed.

*Affirmed.*

HARNSBERGER, J., concurs.