**Daniel E. MARKEN, Plaintiff-Appellant,**

v.

**C. M. GOODALL, a widow, et al.,
Defendants-Appellees.**

No. 72–1882.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 30, 1973.

Decided May 21, 1973.

Carl L. Lathrop, Cheyenne, Wyo., for plaintiff-appellant.

H. B. Harden, Jr., Casper, Wyo., for defendants-appellees, C. M. Goodall and Goodall Oil Co.

Donald C. McKinlay, Denver, Colo. (Ted Simola, Cheyenne, Wyo., on the brief), for defendant-appellee, Atlantic Richfield Co.

Before LEWIS and BARRETT, Circuit Judges, and SMITH,* District Judge.

* Of the Eastern District of Michigan, sitting by designation.

BARRETT, Circuit Judge.

Daniel E. Marken appeals from the decision denying his prayer for specific performance based upon his alleged preferential right to purchase the working interest in an oil and gas lease owned by one R. A. Goodall, doing business as Goodall Oil Company, a sole proprietorship. In the alternative, Marken sought damages in the amount of $50,000 together with interest and costs. The Court held that Marken had waived any preferential right by remaining silent and acquiescing in the sale of the Goodall working interest to Atlantic Richfield on May 3, 1970.

In June of 1952 Marken entered into a drilling contract with Superior Oil Company wherein Marken agreed to drill a well on lands leased by Superior from the State of Wyoming. Superior had acquired the lease by assignment from one Otto R. Bolln. Superior in turn assigned the lease to Marken in consideration for the drilling and testing of a well on the lands by Marken. Marken sold one-fourth of the working interest to R. A. Goodall before the well was tested. This sale-assignment was evidenced in part by a Joint Operating Agreement prepared and executed by Marken and sent to Goodall. Goodall executed the Agreement after making numerous changes and additions which were initialed for Goodall by George W. Osbeck, Goodall's employee. The Agreement, as so changed, was returned to Marken for his approval. Marken neither initialed the changes nor returned a copy of the Agreement to Goodall. Goodall, however, retained an unexecuted copy of the changed Agreement in his files. Goodall died in 1953. His widow, C. M. Goodall, succeeded to his interest.

In 1966, the lands covered by the subject lease were unitized with other lands for water-flood. On June 21, 1967, Atlantic began the water-flood recovery program on the lease. It did not prove successful until April or May of 1970. On August 14, 1968, Mrs. Goodall sent an Invitation to Bid for the 25% working interest to Atlantic Richfield who bid $20,000. It was accepted on October 14, 1968. This sale was not, however, completed until May 3, 1970, when the purchase money was paid.

On September 21, 1970, Marken for the first time asserted his alleged preferential right to purchase the working interest sold to Atlantic. Marken relied on paragraph 11 of the Joint Operating Agreement which reads in pertinent part as follows:

> Before the sale by any party hereto of its interest in the Joint Leases, or any of them, the other parties hereto shall be given the refusal thereof at the price offered in good faith by a third party, and shall have the preferred right to purchase at the price stated, which right shall be exercised within five (5) days after reecipt (sic) of written notice of the offer made by a third party.

Prior to September 21, 1970, Marken had received actual notice of the proposed sale of the Goodall working interest to Atlantic Richfield. He did not, however, assert his contended preference right. As early as November of 1968, Clarence Peterson, Atlantic's attorney, asked Marken to furnish him with two assignments from Marken to Goodall and a copy of the Joint Operating Agreement. Marken ignored the request. Peterson had already searched the records of the State Land Board and the County Clerk's records in Douglas, Wyoming, as to Goodall's interest. He did not find any recorded documents between Marken to Goodall. George W. Osbeck had already given Atlantic the documents in Goodall's file, including an unexecuted copy of the Joint Operating Agreement between Goodall and Marken. Peterson asked for additional material and a signed copy of the Agreement, but Osbeck said he had given him all of the records in the Goodall files. Attorney Charles A. Redpath took over the title investigation when Peterson left Atlantic. He phoned the Markens and asked for the two assignments and the agreement. This request was ignored. Redpath prepared a Replacement Assignment to re-

place the two assignments between Marken and Goodall which Redpath believed had either been misplaced or lost. On January 27, 1969, Osbeck told Marken about the sale by Mrs. Goodall to Atlantic for $20,000. Osbeck, too, requested that Marken sign the Replacement Assignment. Marken ignored all requests from Atlantic's attorneys and Osbeck. Marken stated during one phone conversation with Osbeck that: "Well, if they don't pay you, perhaps I can buy it."

Marken contends that: (1) he has a preferred right to buy the working interest of Goodall under the Joint Operating Agreement; (2) he was not given the required notice and opportunity to purchase the working interest as provided by the Agreement; (3) Atlantic Richfield purchased the working interest with prior notice of his preferred right to buy the interest; and (4) he was not guilty of laches.

We cannot overturn the holdings of the trial court unless they are clearly erroneous. Butler Paper Company v. Business Forms, Ltd., 424 F.2d 247 (10th Cir. 1970); C. H. Codding & Sons v. Armour and Company, 404 F.2d 1 (10th Cir. 1968). Appellate courts cannot try a case de novo. The resolution of conflicting evidence, as exists in this case, is particularly within the province of the trial court and findings must be given added weight when we consider the opportunity of the trial judge to hear and observe the witnesses. United States v. 79.95 Acres of Land, More or Less, in Rogers County, State of Oklahoma, 459 F.2d 185 (10th Cir. 1972); Davis v. Cities Service Oil Company, 420 F.2d 1278 (10th Cir. 1970); McKeel v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 419 F.2d 1291 (10th Cir. 1969). Further, it is settled law in our circuit that the views of a Federal District Judge who is a resident of the state where the controversy arose in a case involving the interpretation of the laws of that state, carries extraordinary persuasive force on appeal. Hardberger and Smylie v. Employers Mutual Liability Insurance Company of Wisconsin, 444 F.2d 1318 (10th Cir. 1971); Hamblin v. Mountain States Telephone and Telegraph Company, 271 F.2d 562 (10th Cir. 1959).

Marken's contentions are without real merit when considered in the light of the trial court's Conclusions of Law, to-wit:

3. Plaintiff had actual knowledge of the proposed sale by Goodall to Atlantic and therefore it was not necessary that Goodall give plaintiff written notice.

4. Plaintiff waived any right which he had to acquire the interest sold by Goodall to Atlantic by remaining silent and acquiescing in the sale for a period of almost two years after acquiring actual knowledge of the proposed sale. "[W]here a plaintiff, with knowledge of the relevant facts, acquiesces for an unreasonable length of time in the assertion of a right adverse to his own, the court may presume assent to the adverse right, and the consequent waiver of the right sought to be enforced." Pfister v. Cow Gulch Oil Co., 189 F.2d 311 (10th Cir. 1951).

5. Plaintiff, after having received actual knowledge of the proposed sale, remained silent with regard to his right of refusal while defendants entered upon the costly and risky water flood recovery program which ultimately resulted in greatly enhancing the value of the lease. It was only after the water flooding proved successful that plaintiff broke his long silence and demanded he be permitted to exercise his right of refusal. It was eloquently stated by Justice Potter in the case of Merrill v. [Rocky Mountain] Cattle Co., 26 Wyo. 219, 181 P. 964 (1918), that "[P]roperty worth thousands to-day is worth nothing to-morrow; and that which to-day would sell for a thousand dollars at its fair value may, by the natural changes of a week, or the *energy and courage of desperate enterprise,* in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such

property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit". (Emphasis supplied).

6. The law explicitly states that when parties are engaged in business enterprises, such as oil and gas leases, which by their very nature fluctuate substantially in value, such parties cannot demand specific performance of contracts unless they assert their rights diligently and without unreasonable delay. Socony Mobil Oil Company v. Continental Oil Company, 335 F.2d 438 (10th Cir. 1964). This axiom of law clearly applies to the circumstances leading to plaintiff's claim for specific performance of his right of refusal as provided for in the Joint Operating Agreement.

7. The plaintiff's conduct in failing to assert an adverse claim to Goodall's proposed sale of the lease until Atlantic successfully completed a risky business venture which increased the value of the lease, brings into effect the doctrine of laches. This Court has previously stated "[T]he rule of laches must foreclose tardy claimants from asserting any rights in property when they sit quietly by and permit some one else 'to bring into form and being a latent property right' which only in recent years appeared to have considerable or potential value". Amerada Petroleum Corporation v. Rio Oil Co., 225 F.Supp. 907 (D.C.Wyo.1964).

8. The Tenth Circuit has stated with regard to laches that "[A] person may not withhold his claim awaiting the outcome of a doubtful enterprise and, after the enterprise has resulted in financial success favorable to the claimant, assert his interest, especially where he has thus avoided the risks of the enterprise". Pfister v. Cow Gulch Oil Co., supra. Since plaintiff failed to exercise his preferential right of refusal when he first received actual knowledge of the sale of the lease, and chose instead to sit back and allow Atlantic to undertake the doubt-

ful water flood program the doctrine of laches prevents him from asserting his right now that the property, in which he risked nothing, proved to be successful.

See Marken v. Goodall, 357 F.Supp. 317 (D.Wyo.1972).

 We have carefully reviewed the record. We hold that the evidence fully supports the trial court's findings.

Affirmed.